UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IMAN JONES, an individual, | |
| Plaintiff, | 2:09-CV-01874-LRH-RJJ |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | ORDER |
| Defendants. | |
| JOSHUA SIMS, | |
| Cross-Complainant, | |
| v. | |
| AZ SEARCH AND RECOVERY, LLC, an Arizona limited company, | |
| Cross-Defendant. | |
| JOSHUA SIMS, | |
| Third-Party Plaintiff, | |
| v. | |
| FINEX CAPITAL GROUP, LLC, a Nevada Limited Liability Company, d/b/a/ LOANEX, | |
| Third-Party Defendant. | |

Before the court is Third-Party Defendant Finex Capital Group, LLC, d/b/a Loanex's ("Loanex") Motion to Dismiss Third-Party Complaint (#75[1]). Third-Party Plaintiff Joshua Sims ("Sims") filed an opposition (#76), and Loanex filed a reply (#77).

## I.   Facts and Procedural History

This action arises out of the repossession of primary plaintiff Iman Jones' black Ford Expedition from his residence on October 16, 2008. Loanex, a title loan company, contracted with AZ Search and Recovery ("ASR") to accomplish the repossession, which was executed by ASR employees Joshua Sims, Justin Gooden and others. Jones essentially alleges that he refused the repossession and attempted to leave with the vehicle but was blocked in and menaced by Sims and two other men carrying heavy metal objects. Jones responded by retrieving a can of mace from his belt, shouting at the men to stay back, and calling 911. Jones further alleges that the responding police officers arrested Jones based on the false accusations of Sims and Gooden that Jones had pointed a gun in their direction, and that the officers permitted the repossession of Jones' vehicle and refused to permit Jones to retrieve his personal effects. Jones was charged with a gross misdemeanor for aiming a firearm at a human being and booked into the Clark County Detention Center, but the charges were dismissed upon the prosecutor's motion.

On March 10, 2010, Jones filed an Amended Complaint (#54) that includes seven claims for relief against ASR, Sims and Gooden: (1) false arrest, (2) false imprisonment, (3) intentional infliction of emotional distress, (4) civil conspiracy, (5) negligent hiring, training, supervision, and control,[2] (6) assault, and (7) negligence.[3] On March 24, 2010, Sims filed an Amended Answer (#58), which included a Cross-Complaint for Indemnification against ASR and a Third-Party

---

[1] Refers to the court's docket entry number.

[2] This claim is not alleged against Sims and Gooden.

[3] The Amended Complaint also includes a claim under 42 U.S.C. § 1983 against the Las Vegas Metropolitan Police Department ("LVMPD") and three LVMPD officers.

Complaint against Loanex. The Third-Party Complaint includes five claims for relief: (1) implied indemnity, (2) comparative indemnity, (3) declaratory relief, (4) equitable indemnity, and (5) contribution. On May 20, 2010, Loanex filed the instant Motion to Dismiss Third-Party Complaint (#75), which was followed by Sims' opposition (#76), and Loanex's reply (#77).

While the present motion was pending, primary plaintiff Jones moved for leave to file a proposed Second Amended Complaint (#82, Ex. 1) to add an eighth claim for relief against ASR, Sims and Gooden for breach of the peace and to add Loanex as a direct defendant subject to the same eight claims. All eight of Jones' claims against Loanex are based in whole or in part on a theory of vicarious liability for the actions of ASR and its employees. Furthermore, three of the claims—negligent hiring, training, supervision and control, negligence, and breach of the peace—are additionally based on a theory of direct liability. In a separate Order filed concurrently, this court has granted Jones leave to file the Second Amended Complaint.

## II.     Legal Standard

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows

the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

**III.   Discussion**

    **A.  Relationship between Loanex and Sims**

As a categorical basis for dismissal of Sims' Third-Party Complaint, Loanex argues that no nexus or relationship exists between Loanex and Sims, and that Sims had no actual authority to act on behalf of Loanex. Loanex argues that Sims acted only as the employee of ASR and has no employment or agency relationship with Loanex.

It is alleged that Loanex, a title loan company, contracted with ASR to repossess Jones' vehicle and that Sims and others were the employees of ASR who performed the repossession.

4

Loanex has also represented that "ASR is a company that repossesses personal property, including vehicles," and that Loanex "contracted with ASR to perform work." Doc. #85, p. 4.

Based on these relationships and the nature of the work performed, this court has determined in its separate Order filed concurrently that Loanex's duty to peaceably repossess collateral and provide responsible repossession agents is nondelegable, that Loanex's duty applies even where an independent contractor is hired to perform the repossession, that based on that nondelegable duty a master-servant relationship is deemed to exist between Loanex and those performing the repossession on its behalf, and that Loanex may be held vicariously liable for torts committed by the repossession agents. Accordingly, the court rejects Loanex's categorical argument that all of Sims' third-party claims must be dismissed because no nexus or relationship exists between Loanex and Sims.

### B. Implied Indemnity and Equitable Indemnity

Indemnity "is a complete shifting of liability to the party primarily responsible." *Medallion Dev., Inc. v. Converse Consultants*, 930 P.2d 115, 119 (Nev. 1997). Besides express contractual indemnity, which is not alleged in this case, there exists two classes of noncontractual indemnity: (1) implied contractual indemnity, also termed implied-in-fact indemnity, and (2) equitable implied indemnity, also termed implied-in-law or common-law indemnity. 41 Am. Jur. 2d *Indemnity* § 20.

Sims' First and Fourth Claims for Relief are respectively labeled "Implied Indemnity" and "Equitable Indemnity." Doc. #58, pp. 20, 22. However, it does not appear to the court that there is any doctrinal difference between the two claims, both of which appear to allege only equitable implied indemnity. Neither claim is supported by any well-pleaded allegations regarding the existence of a binding contract that necessarily implies a right of indemnity. *See* 41 Am. Jur. 2d *Indemnity* § 20 (2010) (setting forth the requirements for implied-in-fact indemnity). Accordingly, the court hereby construes Sims' First and Fourth Claims for Relief as stating a single claim for

equitable implied indemnity. To the extent Sims intends to allege a claim of implied contractual indemnity, that claim is hereby dismissed without prejudice.

A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter. *Rodriguez v. Primadonna Co.*, 216 P.3d 793, 801 (Nev. 2009) (citing 41 Am. Jur. 2d *Indemnity* § 20 (2005)). "[E]quitable indemnity is a judicially-created construct to avoid unjust enrichment." *Medallion*, 930 P.2d at 119. "[T]he basis for indemnity is restitution: one person is unjustly enriched when another discharges liability that it should be his responsibility to pay." *Piedmont Equip. Co. v. Eberhard Mfg. Co.*, 665 P.2d 256, 528 (Nev. 1983). "The premise is that indemnity should be granted in any situation where, as between the parties themselves, it is just and fair that the indemnitor should bear the entire loss, rather than leaving it on the indemnitee or dividing it proportionately between the parties by contribution." *Id.* Because "[a]ctive wrongdoers should bear the consequences of their injurious actions," equitable indemnity "is only available 'so long as the indemnitee is free from active wrongdoing regarding the injury to the plaintiff.'" *Medallion*, 930 P.2d at 119-20 (quoting *Piedmont*, 665 P.2d at 259). "Evidence supporting only passive negligence, breach of implied warranty or strict liability is insufficient to establish active wrongdoing." *Id.*

These general principals apply in the principal-agent context. "A principal has a duty to indemnify an agent . . . when the agent suffers a loss that fairly should be borne by the principal in light of their relationship." Restatement (Third) of Agency § 8.14(2)(b) (2006). "A principal's duty to indemnify does not extend to losses [incurred by the agent] that result from the agent's own negligence, illegal acts, or other wrongful conduct." *Id.* § 8.14 cmt. b.

These principals also apply to an indemnitee's litigation expenses incurred in defending against claims by a third-party. *See id.* § 8.14 cmt. d. Under Nevada law, "where an indemnitee

would be entitled to recover from an indemnitor the amount of a judgment paid to the plaintiff, as determined by the facts as found by the trier of fact, the indemnitee is entitled to recover in indemnity at least some of the attorney's fees and court costs incurred in defending the primary action." *Piedmont*, 665 P.2d at 260.  However, "the indemnitee may recover only those fees and expenses attributable to the making of defenses which are not primarily directed toward rebutting charges of active negligence." *Id.*  The indemnitee's entitlement to recovery from the indemnitor is not determined based on the unproven allegations in the third party's complaint, but upon the evidence presented and the facts found at trial.  *Id.*; Restatement (Third) of Agency § 8.14 cmt. d (2006).

Besides arguing that Loanex and Sims lack the requisite nexus or relationship for indemnity, which this court has already rejected, Loanex alternatively argues that Sims' equitable indemnity claim fails because Sims was an active wrongdoer, while "Loanex's involvement was passive, at best."  Doc. #75, p. 9.  Sims responds with the opposite contention that "Loanex was clearly the active party as the entity that authorized and paid for ASR and its agents to repossess the vehicle from Mr. Jones," and that "Sims was passive" in that he "took his directions from ASR," which "took directions from Loanex."  Doc. #76, p. 14.  Sims also alleges in his Third-Party Complaint against Loanex that any liability to Jones assessed to Sims "will be solely due to the conduct of [Loanex]" and that Sims' liability "will be vicarious only and . . . the direct and proximate result of the active and affirmative conduct on the part of [Loanex]."  Doc. #58, p. 20, ¶¶ 10-11.

The court is not required to accept as true Sims' conclusory allegations regarding the respective liabilities and responsibilities of Loanex and Sims in relation to primary plaintiff Jones.  The Third-Party Complaint is devoid of any factual allegations upon which the court might accept as true that any liability assessed to Sims would be solely due to the affirmative actions or representations of Loanex and that Sims' liability would be vicarious only.  Instead, considering

the nature and factual allegations underpinning the various claims for relief alleged against Sims and Loanex by primary plaintiff Jones in his proposed Second Amended Complaint (#82, Ex. 1), Sims faces the potential of direct liability for his own affirmative misconduct in performing the repossession of Jones' vehicle. No vicarious liability is asserted against Sims for the actions of Loanex. "Principals, not agents, are subject to vicarious liability." Restatement (Third) of Agency § 7.03 cmt. b (2006). Indeed, as Sims himself alleges "the alleged acts and/or omissions complained of by [Jones], were performed by [Sims] during the course and scope of his employment with [ASR and Loanex], and [Sims] was acting under the direction and instruction of [ASR and Loanex]." Doc. 58, p. 20, ¶ 10.

As this litigation now stands, any liability to Jones that might be imposed upon Sims would be attributable to Sims' own active wrongdoing and therefore not subject to indemnification by Sims' principal, Loanex.[4] *Medallion*, 930 P.2d at 119; Restatement (Third) of Agency § 8.14 cmt. b (2006). Likewise, any litigation expenses incurred by Sims in defense of Jones' claims against him (whether that defense is successful or not) would be attributable to the making of defenses that are primarily directed toward rebutting charges of active wrongdoing and therefore would be not recoverable in indemnity. *Piedmont*, 665 P.2d at 260. Thus, Sims' Third-Party Complaint fails to state a claim for equitable indemnity against Loanex. The First and Third Claims for Relief will therefore be dismissed without prejudice.

////

////

---

[4] The court need not resolve the parties' dispute as to whether Loanex's involvement should be characterized as "active" or "passive." The determination that Sims' alleged involvement was "active" is sufficient to negate his asserted entitlement to indemnity. The court observes, however, that where a party is held vicariously liable for the breach of a personal and nondelegable duty to a third party, such a recovery "'would not constitute imposition of liability without fault.'" *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1180 (Nev. 1996) (quoting *Peachtree-Cain Co. v. McBee*, 316 S.E.2d 9, 11 (Ga. Ct. App. 1984), *aff'd*, 327 S.E.2d 188 (Ga. 1985)).

### C. Comparative Indemnity

Sims' Second Claim for Relief against Loanex is labeled "Comparative Indemnity." Doc. #58, p. 21. The claim asserts that if Sims is held liable for "all or any part of the claim or damages asserted against him by the Plaintiff [Jones]," then Loanex, "to the extent [its] fault was a proximate cause of [Jones'] damages and/or losses, [is] responsible for said damages and/or losses in proportion to [Loanex's] comparative negligence and [Sims] is entitled to a determination of several liability." *Id.* at ¶ 15. As further explained by Sims in his opposition papers, the claim is addressed to the eventuality that a percentage of fault may be assessed against Sims pursuant to Nevada's comparative negligence statute, NRS § 41.141, and it seeks indemnification from Loanex for such proportionate liability. Doc. #76, p. 14. Thus, by alleging this claim for "comparative indemnity" in conjunction with his claims for "implied" and "equitable" indemnity, Sims has sought to cover his bases and assert a "right to full indemnity for carrying out the business of his Principal Loanex in a reasonable and foreseeable manner." *Id.* at 15.

"Comparative indemnity" is not a recognized cause of action in Nevada. As conceived of by Sims, the claims appears to combine the concepts of contribution, indemnity, and comparative fault. *See* NRS §§ 17.225, 17.265, 41.141(4) To the extent Sims seeks indemnity, the claim fails for the reasons stated in Part B *supra*. To the extent Sims seeks contribution, the claim is duplicative of Sims' Fifth Claim for Relief for contribution, addressed in Part D *infra*. Thus, the Second Claim for Relief for comparative indemnity will be dismissed.

### D. Declaratory Relief and Contribution

Loanex moves to dismiss Sims' Third and Fifth Claims for Relief, for declaratory relief and contribution, respectively, based solely on the already-rejected argument that no nexus or relationship exists between Loanex and Sims. *See* Doc. #75, pp. 11-12. The motion will therefore be denied as to the Third and Fifth Claims for Relief.

9

1  IT IS THEREFORE ORDERED that Loanex's Motion to Dismiss Third-Party Complaint
2  (#75) is GRANTED in part and DENIED in part. The First, Second and Fourth Claims for Relief
3  are hereby DISMISSED without prejudice. The motion is denied as to the Third and Fifth Claims
4  for Relief.
5  IT IS SO ORDERED.
6  DATED this 17th day of January, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE