UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IMAN JONES, an individual, | |
| Plaintiff, | 2:09-CV-01874-LRH-RJJ |
| v. | |
| | ORDER |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of Clark County, Nevada; G. CROSSMAN, individually and in his official capacity as a Police Officer with the Las Vegas Metropolitan Police Department; D. ROSEQUIST, individually and in his official capacity as a Police Officer with the Las Vegas Metropolitan Police Department; J. GIESE, individually and in his official capacity as a Police Officer with the Las Vegas Metropolitan Police Department; AZ SEARCH AND RECOVERY, LLC, an Arizona limited liability company; JOSHUA SIMS, an individual; JUSTIN GOODEN, an individual; FINEX CAPITAL GROUP, LLC d/b/a LOANEX, a Nevada limited liability company; POLICE OFFICER DOES 1 through 10, inclusive; INDIVIDUAL DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive, | |
| Defendants. | |

Before the court are two motions for summary judgment filed by Defendant Las Vegas Metropolitan Police Department ("LVMPD") (#124[1]) and Defendant Garn Crossman (#126). Plaintiff Iman Jones filed separate oppositions (#135/139 and #131, respectively), replies were filed by LVMPD (#150) and Crossman (#151), and Jones filed supplements to his oppositions (#154 and #155).

I.   **Facts and Procedural History**

On the evening of October 16, 2008, multiple 911 calls were made for police assistance at an apartment complex, where Iman Jones was resisting the repossession of his Ford Expedition. Jones was the first to call 911 at 10:48 p.m., when he reported that a repo agent was blocking his vehicle and preventing him from driving away. In response to the operator's questions, Jones reported that he had a weapon, as he worked as an armed security guard, and that he was in the truck with the gun but did not have it out and was not brandishing it.

During a second call placed by LVMPD to Jones at 10:51, Jones reported that two repo agents were threatening him with mace and trying to put a lock on his vehicle. Jones then began yelling at the agents repeatedly, "Get away from my vehicle! Now!" Still shouting, Jones reported that the agents were harassing him in his car and approaching him with mace in their hands and some sort of metal contraptions. The operator advised Jones to calm down and that if they were there to repossess the vehicle legally there was not much the police could do. The operator further advised that she was sending police, and Jones should stay in the truck with the doors and windows locked, ignore the agents and not get into a confrontation. The call ended at approximately 10:54.

At 10:52, while Jones was still on the phone with LVMPD, two more 911 calls were made by a female apartment resident and by the owner of the tow company, JR, who was there to assist his employee, Joshua Sims, in the repossession. The neighbor reported hearing the men yelling outside, and JR reported that they were doing a repo and a guy "just pulled a gun on us" and

---

[1] Refers to the court's docket entry number.

2

"pointed it at me." JR also reported that they had the vehicle hooked up until Jones pulled it off the lift, and that Jones was still in the car with the gun in his hand. JR identified Jones as the person with the gun, which he described as a revolver, nickel or silver, possibly a .357 Magnum.

At 10:55, another apartment resident called 911 to report hearing yelling outside and hearing someone say a guy had a gun.

At 10:57, Jones called 911 again to request the police to hurry up because the repo agents were continuing to harass him. When asked whether he still had a weapon and whether he had threatened anyone with it, Jones stated that he had it with him in the vehicle but denied pointing it at anyone. Jones also stated that the gun was underneath his seat, nobody had been threatened with the gun, and the repo agents were threatening him with mace.

The police arrived soon thereafter. The five responding LVMPD officers included Sergeant and Field Training Officer ("FTO") Howard Crosby, his trainee Garn Crossman, a second FTO and his trainee Daniel Rosequist, and Officer Joshua Giese. Jones got out of his vehicle and was approached by Crossman, FTO Crosby, and another officer. Jones identified himself as the 911 caller and consented to a pat down search by Crossman. Jones had a can of mace in his pocket and told the officers he had a gun in the vehicle. The officers later recovered the gun, a .38 caliber silver revolver, from under the seat. Jones also gave his version of the incident. Among other things, Jones stated that earlier in the evening when Sims came to his apartment door to inform him of the repossession he answered the door with the gun in his hand but not pointed at Sims, and that he brought the gun down to his vehicle along with his other work equipment when he attempted to leave for the night.

The three officers questioning Jones had not spoken to the repo agents, and it was apparent to Jones that they had already been informed by dispatch that the repo agents had accused Jones of pointing his gun at them. Jones denied pointing his gun at anybody, but the officers did not believe him. According to Jones, he repeatedly requested the officers to interview the numerous witnesses

3

standing on their balconies watching, but they refused to do so.  According to Rosequist, some apartment residents near the vehicle were interviewed but had no information.  No witness statements were taken.

Rosequist and his FTO interviewed the repo agents, JR and Sims.  Under separate questioning, both identified Jones' gun as a silver revolver, and they provided written statements that Jones pointed the gun at JR.

Jones was arrested by Crossman and jailed on a gross misdemeanor charge of aiming a gun at a human being under NRS § 202.290, and his gun and ammunition were impounded.  No other items were inventoried.  Jones claims that FTO Crosby took the car keys out of his pocket and gave them to the repo agents, who were not taken into custody and repossessed the vehicle.  The charges against Jones were later voluntarily dismissed at his preliminary hearing.

Following unsuccessful complaints to Internal Affairs and the Citizens Review Board, Jones filed this action on September 24, 2009, against the LVMPD, Officers Crossman, Rosequist and Giese, the repo agents, and others.  In his Second Amended Complaint, filed on January 24, 2011, Jones alleges six claims against the LVMPD and its officers, including: (1) violation of 42 U.S.C. § 1983; (2) false arrest; (3) false imprisonment; (4) intentional infliction of emotional distress; (5) civil conspiracy; and (6) negligent hiring, training and supervision, which is alleged against LVMPD only.

LVMPD and Crossman now move for summary judgment on all claims.  Rosequist and Giese also moved for summary judgment, but they have been dismissed by stipulation.

**II.   Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the

4

evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *Id.* at 252.

**III.  Discussion**

Jones alleges that LVMPD and Crossman violated his Fourth Amendment rights by arresting him without probable cause. In moving for summary judgment, Defendants contend that Jones' arrest was supported by probable cause, that even if it were not Crossman is entitled to qualified immunity and that Jones has failed to establish *Monell* liability against LVMPD.

5

"Probable cause [to arrest] exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (internal quotation marks, brackets and citation omitted). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). "Fourth Amendment issues[] are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001).

Here, the court has no difficulty in concluding that, based on the information known to the officers at the time, there was probable cause to arrest Jones for aiming a gun at a human being, in violation of NRS § 202.290. The police had received a contemporaneous report by the alleged victim, JR, that a man had just pulled a gun and pointed it at him during a vehicle repossession, he identified Jones as the owner of the vehicle and the perpetrator, and he correctly described Jones' silver revolver. JR's allegation was also corroborated by Sims, the other repo agent involved in the altercation, and it was consistent with the circumstances. It was known from multiple 911 calls that Jones was actively resisting the repossession of his vehicle. And just before the crime was reported, the situation had escalated to the point where, by Jones' own contemporaneous account, he felt physically threatened by multiple men rushing his vehicle with mace and metal objects, and he was heard screaming repeatedly at those men to keep away. Although Jones denied brandishing the gun, he admitted that he grabbed the gun for protection earlier in the evening when he answered the loud banging on his door, and that he had the gun unholstered and within his reach in the vehicle, where the altercation and alleged crime occurred. The police also later recovered the gun unholstered under Jones' seat.

Jones makes several arguments to establish that a factual dispute exists as to whether he, in fact, pointed the gun at JR. For instance, Jones denies that he pointed his gun at anyone, and he

offers various innocent explanations for why he took his gun out of his duffel bag and holster and placed it under his car seat, all of which he contends this court must accept as true. Jones' possible innocence is immaterial, however, to the court's determination of whether, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *Peng*, 335 F.3d at 976 (internal quotation marks, brackets and citation omitted). This "fair probability" requirement does not require "certainty or even a preponderance of the evidence." *Gourde*, 440 F.3d at 1069. And the existence of factual disputes regarding what actually occurred do not prevent this court from determining the existence of probable cause on summary judgment. Whether the police had probable cause is a mixed question of fact and law. *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999). The issue is therefore subject to determination on summary judgment where the material facts (*i.e.*, the information known to the arresting officers) are not genuinely disputed. *See Peng*, 335 F.3d at 978, 979-80; *see also Conner v. Heiman*, --- F.3d ----, 2012 WL 759618, *4 (9th Cir. March 9, 2012) (in granting qualified immunity, observing that the fact that a suspect's "behavior was 'consistent' with that of an innocent person" and "that reasonable people could draw different conclusions based on [his] behavior . . . is irrelevant to the probable cause analysis").

Jones also contends that the officers' investigation was insufficient because they relied solely on the disputed and uncorroborated accusations of the alleged victims. "In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). "A sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Peng*, 335 F.3d at 978 (internal quotation marks and citation omitted).

Here, these requirements were plainly satisfied. JR's reports to both 911 and the responding officers, that Jones had pulled his gun and pointed his gun at JR during an attempted repossession, were sufficiently detailed to establish the crime of aiming a gun at a human being. The basis for JR's knowledge was also well-established. JR reported that he saw the gun, and he correctly described Jones' silver revolver. Moreover, JR's report was corroborated by Sims' account as a percipient witness and was consistent with the independently verifiable facts, including Jones' admission that he had a gun in his possession and within his reach in his vehicle, and the officers' recovery of a gun from under Jones' seat that matched the description given by the repo agents.

Jones also argues that the officers' investigation was insufficient because they failed to interview the neighbors that called 911 and ignored Jones' requests to interview the numerous individuals that were watching from their balconies and might verify his account of the incident. The court rejects these arguments, however. The 911 callers reported only hearing, not seeing, the altercation. Also, Rosequist testified that some apartment residents near the vehicle were interviewed but had no information. Although Jones offers the written statements of two witnesses to establish that a further investigation would have supported his version of events, at best these statements tend to establish only the existence of a factual dispute as to whether Jones in fact pointed his gun at JR. They do not negate the existence of probable cause, nor do they establish the police failed to conduct a proper investigation before arresting Jones. Both statements reflect that the declarants returned to their apartments for the night, rather than approach the police or even remain on their balconies, where the police might have found them. The police need only conduct "a reasonable investigation under the circumstances." *Peng*, 335 F.3d at 979. Where, as here, probable cause has been established based on the detailed reports of two eyewitnesses and the corroborating facts and circumstances, the arresting officers are not required to canvass the neighborhood for unknown witnesses that might have seen it differently.

Because Jones' arrest was supported by probable cause, LVMPD and Crossman are entitled to summary judgment on his § 1983 claim regarding his arrest. Furthermore, LVMPD and Crossman are also entitled to summary judgment to the extent Jones' § 1983 claim is based on the seizure of his vehicle. Although police generally may not assist in effectuating an unlawful repossession, no due process or Fourth Amendment violation occurs where, as here, the police are "summoned to a scene not of their making" and their facilitation of the repossession is incidental to the officers' lawful duty to effectuate an arrest. *Meyers v. Redwood City*, 400 F.3d 765, 772-73 (9th Cir. 2005). Although Jones contends that FTO Crosby handed over Jones' car keys to the repo agents following his arrest, Crosby is not a defendant in this action. As for Crossman and LVMPD, Jones presents no evidence that Crossman assisted in the repossession other than indirectly through his lawful arrest of Jones, nor any evidence that Crosby's conduct was pursuant to any policy or longstanding custom or practice or that he had final policymaking authority, as is required for municipal liability. *See Webb v. Sloan*, 330 F.3d 1158, 1163-64 (9th Cir. 2003). Accordingly, LVMPD and Crossman are entitled to summary judgment on all aspects of Jones' § 1983 claim.

The court further finds that LVMPD and Crossman are entitled to summary judgment on Jones' remaining claims. As reflected in his Second Amended Complaint, Jones' claims for false arrest, false imprisonment, intentional infliction of emotional distress, and negligent hiring, training and supervision are all predicated exclusively on the alleged unlawfulness of his arrest, which this court has rejected. And Jones' claim for civil conspiracy also necessarily fails, as it is predicated on an alleged conspiracy to commit the aforementioned violations.

////
////
////
////
////

IT IS THEREFORE ORDERED that Defendant LVMPD's Motion for Summary Judgment (#124) and Defendant Garn Crossman's Motion for Summary Judgment (#126) are GRANTED.

IT IS SO ORDERED.

DATED this 19th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE